IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

PATRICK V. MORRIS, Individually
and on Behalf of All Others
Similarly Situated,

     Plaintiff,

v.                        Civil Action No.: 3:02cv797

WACHOVIA SECURITIES, INC.,

     Defendant.

MEMORANDUM OPINION

This matter is before the Court on remand from the Court of Appeals, which affirmed the decision in Morris v. Wachovia Securities, Inc., 277 F. Supp. 2d 622 (E.D. Va. 2003) but instructed this Court to impose the sanction of admonition on the lawyers responsible for violations of Fed. R. Civ. P. 11 that were found in the affirmed decision. Pursuant to that instruction, the Court considers whether it is appropriate to sanction the following persons for Rule 11 violations: Mark J. Krudys, Peter Safirstein, Steven G. Schulman, and the law firm Milberg Weiss LLP ("Milberg").[1]

---

[1]  During the pendency of this litigation, this law firm has been called variously, "Milberg Weiss Bershad Hynes & Lerach LLP," "Milberg Weiss Bershad & Schulman LLP," "Milberg Weiss & Bershad LLP," and "Milberg Weiss LLP" -- its name at the writing of this decision.

## I. BACKGROUND

### A.  Procedural Background

Patrick V. Morris filed a class action complaint against Wachovia Securities, Inc. ("Wachovia") for violations of securities laws.  At the outset of the case, and on motion of the lawyers and Milberg, Steven G. Schulman, then a senior partner at Milberg, was appointed as lead counsel.  After extensive discovery and several motions, the Court issued summary judgment in favor of Wachovia, and closed the case.

Wachovia then moved for Rule 11 sanctions against Plaintiff's counsel.  The Court found that Plaintiff's counsel had committed three Rule 11 violations, but concluded that the violations were "de minimis," and declined to issue sanctions.  Wachovia appealed, and the Fourth Circuit held that the Private Securities Litigation Reform Act ("PSLRA") obliges the district court to issue sanctions for the violations.  Morris v. Wachovia Securities, Inc., 448 F.3d 268, 285 (4th Cir. 2006).  The Court of Appeals recognized the de minimis nature of the violation, but nonetheless remanded the case with instructions to "enter an order naming and admonishing the lawyers responsible for the identified Rule 11(b) violations."  Id. at 286.

On remand, Mark J. Krudys and Peter Safirstein, two of Morris's attorneys, have accepted responsibility for the Rule 11 violations.  Wachovia contends that Schulman and Milberg should be

2

sanctioned as well.  Schulman and Milberg oppose imposition of sanctions on them.

**B.   Factual Background**

Morris filed this action in November 2002, alleging violations of the federal securities laws in connection with an investment account Morris had with Wachovia under one of Wachovia's investment plans, called the "Masters Program."  Morris was represented originally by Krudys and Matthew B. Mooney, both members of the Virginia Bar.  Mooney and Krudys prepared and filed the Class Action Complaint ("Complaint").  Declaration of Mark J. Krudys. See Docket No. 168.  The Complaint alleged, inter alia, that Wachovia used the Masters Program to earn undisclosed revenue by using Morris's assets to make "stock loans."  Docket No. 1 at 9.

After filing the Complaint, Krudys obtained assistance from Milberg, a well-known firm based in New York that specialized in representing plaintiffs in class action securities law cases. Transcript of the December 11, 2006 Testimony of Steven G. Schulman (hereinafter "Tr.") at 13-14.  On January 29, 2003, on Morris's motion, the Court appointed Morris as lead plaintiff, Schulman as lead counsel, and Krudys as liaison counsel.  Docket No. 11.

According to Schulman, upon his appointment to the lead counsel position, Milberg created a litigation "team" to prosecute the case.  This team, according to Schulman, was constituted in the manner that was typical of the way in which Milberg handled complex

3

class action cases.[2]  First, Milberg assigned a senior partner as the general supervising senior partner.  Tr. at 18, 24.  The supervising attorney, according to Schulman, is charged with "overall strategic responsibilities."  Id. at 4.  Schulman's testimony and the record reflect that, in this capacity, Schulman took on two general duties.  First, he allocated Milberg's resources among the Morris action and other Milberg cases.  See, e.g., Tr. at 18-19, 21, 33; Wachovia Exhibit for the Dec. 11, 2006 Hearing (hereinafter "Wachovia Ex.") 16; Schulman's Exhibits for the December 11, 2006 Hearing (hereinafter "Schulman Exs.") 13B, 14B, 14D, 14F.  Second, Schulman kept up with the progress of this action.

The record confirms that Safirstein emailed Schulman with updates of events in the case, see Schulman Exs. 13A-E, 13I, 14A, 14E, 14G, 14H, 14J, 14N, and sent Schulman pleadings and briefs that Milberg filed; Safirstein Declaration, Schulman Ex. 10 at 2; that Schulman read and commented on some motions and drafts, but not others; see Schulman Exs. 14N, 16; Tr. at 85; and that Schulman conferred with Safirstein about the strategy that Milberg was employing in this action.  See, e.g., Schulman Ex. 10 at 2-3. Schulman and Safirstein agree that, although Schulman consulted

---

[2]    Schulman testified that, whether an attorney at Milberg, or Milberg itself, is appointed as lead counsel, the case is managed in the same fashion, with overall managing counsel, senior litigators, associates, and liaison counsel playing roughly similar roles.  Tr. at 18-19.

with Safirstein to decide how Milberg might approach legal issues in the case, and reviewed some papers submitted to the Court, Schulman relied on Safirstein to conduct factual investigations and research specific legal questions in the case, and to draft the motions and memoranda that were filed.

Schulman explained that, as was its custom in complex cases, Milberg also assigned a senior litigator to "run the case day-to-day."  Schulman described this role as "the most visible, active and day-to-day . . . partner handling this case through the fighting, the arguing, the briefing, the interaction with co-counsel and defense counsel and the court . . . ."  Tr. at 24. Schulman assigned this role to Safirstein, a lawyer at Milberg who recently had become partner at the firm.  Indeed, Krudys initially asked Safirstein to take the case, and Safirstein had asked to be placed in charge of it.  Id.; Schulman Ex. 6.  Schulman testified that he had a great deal of confidence in Safirstein's abilities to handle the litigation because Safirstein was an experienced lawyer who had worked in securities litigation for more than a decade, and because Schulman was aware of Safirstein's work in a previous Milberg case and had been satisfied with the results.  Tr. at 10-11.  Schulman testified that, throughout the litigation, he trusted Safirstein to manage the attorneys who were assigned to the case, id. at 24, to conduct investigations of the facts and law particular to the case, to write the motions and memoranda in the

5

case, and to manage the argument of those motions in court.  Id. at
18, 24-25, 29-30; Schulman Ex. 10.  Schulman's testimony and the
record reflect that Schulman also reviewed some of these motions,
and consulted with Safirstein about how to address particular legal
issues.

Schulman testified that Milberg typically works with liaison
counsel.  Schulman testified that the Morris litigation was
somewhat unusual, because the liaison counsel, Krudys, had
initiated the case and referred it to Milberg, see Tr. at 24-25;
Schulman Memorandum (Docket No. 188) at 5, and because Krudys was
involved in drafting legal documents and making arguments to the
Court, roles not usually filled by local counsel associated with
Milberg.  Tr. at 24-25.  Schulman testified that he never
interacted directly with Krudys during the litigation, but rather
delegated that responsibility to Safirstein.  Id. at 25.

Finally, Milberg also assigned less experienced attorneys and
other staff to the case, as necessary.  Id. at 21.  The record
reflects that Schulman was involved in coordinating the staffing
needs in the Morris litigation with Milberg's other litigation
matters.  Id. at 18-19, 21; Wachovia Ex. 16; Schulman Exs. 13B,
14B, 14D, 14F.  Schulman does not appear to have interacted
directly with these other attorneys and staff members, but rather
relied on Safirstein to manage their work.  Tr. at 29-30.

On February 7, 2003, Plaintiff, with Milberg by then at the helm, filed an Amended Class Action Complaint ("Amended Complaint"). Docket No. 16.  The Amended Complaint re-alleged the "stock loan" claim that first appeared in the Complaint filed by Krudys.  Krudys signed the Amended Complaint, and Schulman and Safirstein were listed in typeface as counsel of record (as they were on subsequent pleadings and briefs).  In his Declaration, Safirstein states that Schulman "relied on me to conduct the necessary factual investigation and legal analysis" of the allegations in the Amended Complaint.  Schulman Ex. 10.

On February 28, 2003, Wachovia moved to dismiss the Amended Complaint.  Docket No. 19.  Five days later, counsel for Wachovia sent a letter addressed to Schulman as lead counsel.  Wachovia Ex. 8.  In the letter, which served as a Rule 11 notice, Wachovia's counsel stated that the Amended Complaint contained numerous inaccuracies.  Among these, the "stock loan" allegation was said to be false because "no stocks in the Masters Program are loaned as alleged by Mr. Morris."  Id. at 2.  Schulman testified that he was not sure whether he saw or read the Rule 11 Letter at the time Milberg received it, Tr. at 99-100, and speculated that Milberg's mailing system might have forwarded the letter directly to Safirstein because Safirstein was listed as the attorney in charge of the case's day-to-day conduct.  Id. at 108-09.  Milberg did not immediately reply to the Rule 11 Letter.  Instead, on March 17, it

7

filed an opposition to the motion to dismiss, which continued to press the "stock loan" allegation.  Docket No. 22.  Schulman's time log reflects that he spent one hour reviewing the opposition brief on March 16.  Wachovia Ex. 9.

On March 21, 2003, Milberg responded to the Rule 11 Letter. Wachovia Ex. 12.  Schulman's time records reflect that he spent one hour reviewing that response.  Id. Ex. 11.  According to Schulman, the letter disagreed with Wachovia's position regarding the "stock loan" claim.  Milberg's response, however, did not specifically mention the "stock loan" allegation.  Instead, it incorporated the positions Plaintiff had taken in the Opposition to Wachovia's Motion to Dismiss filed four days earlier.  Tr. at 103-05.[3]

On Wachovia's motion, the Court dismissed the Amended Complaint.  The dismissal was without prejudice to the filing of a Second Amended Class Action Complaint ("Second Amended Complaint"). On May 9, 2003, Plaintiff filed a Second Amended Complaint. Docket No. 37.  In the Second Amended Complaint, the "stock loan" allegation was removed.[4]  Wachovia moved to dismiss the Second

---

[3]     The Response letter reads, "As you have seen from Plaintiff's [Opposition to Wachovia's Motion to Dismiss], we do not agree with your argument that 'numerous of the allegations in the Amended Complaint are not true.'" Wachovia Ex. 12.

[4]     Schulman's time records show that on May 1, he billed one-half hour to "Wachovia--att[ention] to status." Wachovia Ex. 14 at the December 11 hearing, Schulman explained, "['attention to status'] means that I'm looking at what's happening in the case that day and bringing myself up to date."  Tr. at 122.

Amended Complaint.  Docket No. 38.  On August 12, 2003, the Court dismissed some claims in the Second Amended Complaint and declined to dismiss others.  Docket No. 48.

Thereafter, extensive discovery ensued.  On May 17, 2004, Wachovia moved for summary judgment.  Docket No. 105.  During discovery, Plaintiff's counsel had taken depositions of Burt White, a Wachovia officer, and Charles W. Baldiswieler, a money manager for the Masters Program.  In its memorandum opposing Wachovia's motion for summary judgment, Docket Nos. 113 and 116, Plaintiff's brief mischaracterized Baldiswieler's and White's testimony.  A week before Milberg filed its memorandum in opposition, Safirstein told Schulman in an e-mail, "I know this case cold."  Schulman Ex. 14F.

Schulman testified that he did not remember whether he had read the memorandum opposing Wachovia's motion for summary judgment, Tr. at 128-29, and that he was unfamiliar with Baldiswieler's and White's testimony.  When asked whether he took any steps to ensure that the memorandum opposing summary judgment was "grounded in fact and law," Schulman testified that the step he took was to "satisfy [him]self that Mr. Safirstein was in a position to properly respond to the motion."  Tr. at 127. Safirstein, in his Declaration, states that "Schulman reviewed, but did not prepare the memorandum in opposition [to the Motion for Summary Judgment].  He . . . relied upon me to have properly

characterized the deposition testimony in any filing with the Court." Schulman Ex. 10. In argument at the summary judgment hearing, Plaintiff's counsel again mischaracterized Baldiswieler's and White's testimony. Schulman did not attend the summary judgment hearing.

The Court granted Wachovia summary judgment on all of Morris's remaining claims on August 2, 2004, Docket No. 130, and closed the case. Wachovia then moved for Rule 11 sanctions.

Milberg's records reflect that Schulman billed a total of 10.75 hours on the Morris matter. Schulman Ex. 7. At the December 11 hearing, Schulman testified that he had spent around twenty to thirty additional, unbilled hours on the case, consisting of email correspondence, "impromptu discussions," and the like. Tr. at 34-35. Milberg's billing records reflect that the firm devoted a total of around 3,100 attorney-hours and around 800 staff-hours to the case. Wachovia Ex. 22.

## II. DISCUSSION

### A. Sanctions Against Safirstein And Krudys

In the June 21, 2006 telephone conference, Safirstein and Krudys accepted responsibility for the violations. This comports with the record, which reflects that Safirstein and Krudys created the offending pleadings together, and that they were both intimately familiar with the details of the case. The Court therefore finds that Safirstein and Krudys have responsibility for

the three Rule 11 violations, and, as instructed by the Court of Appeals, they will be admonished in a forthcoming Order.

## B.    Sanctions Against The Law Firm

Milberg argues that, even though at least one of its attorneys has violated Rule 11, it should not be sanctioned itself because "exceptional circumstances" attend this case.  Milberg's arguments supporting this position are unpersuasive.

Rule 11(c)(1)(A) provides that "[a]bsent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees." This provision was added as part of the 1993 Amendments to Rule 11. The Advisory Committee Note to the 1993 Amendments states that this provision was added because "it is appropriate that the law firm ordinarily be viewed as jointly responsible [for its attorney's Rule 11 violations] under established principles of agency."  Rule 11 1993 Amendments Advisory Committee Note.  One commentator cited by Wachovia explains that, under the 1993 Amendments, "[p]erhaps a firm could get off the hook by raising the defense that a rogue lawyer altered a firm-approved pleading before submitting it or disobediently filed a pleading his superiors had rejected as frivolous," but "if a firm's liability for its lawyers' Rule 11 violations is not absolute, it is very nearly so."  Ted Schneyer, _A Tale of Four Systems:   Reflections on How Law Influences the_

11

"Ethical Infrastructure" of Law Firms, 39 S. Tex. L. Rev. 245, 259
(1998).

Filing pleadings in a case prosecuted by his firm is, of
course, at the center of a lawyer's duties, and places his law firm
squarely in liability as respondeat superior under established
principles of agency.  Nevertheless, Milberg identifies three
"exceptional circumstances" that it claims should excuse it from
sanctions.

First, Milberg argues that the Fourth Circuit's remand was a
narrow one that directed the Court to sanction only the lawyers in
the case.  Milberg notes that the Fourth Circuit directed the Court
to "issue a written order admonishing by name the individual
lawyers responsible for the Rule 11(b) violations that the district
court identified," Morris, 448 F.3d at 285 (emphasis supplied by
Milberg), and draws from this that the Court of Appeals, expressio
unius est exclusio alterius, meant for the Court to sanction only
lawyers, and not the firm.  Milberg misconstrues the remand
instructions.

This Court originally found three Rule 11 violations, but
declined to issue sanctions because it concluded that the
violations were de minimis.  Because the Court issued no sanctions
to lawyers, it never addressed Milberg's respondeat superior
liability.  The question presented on appeal was "whether the
district court, within its discretion, appropriately sanctioned

12

Morris's lawyers under Rule 11." Id. at 284.  The Court of Appeals concluded that the PSLRA required some sanction beyond a finding of violation, id. at 285, and issued a remand instructing this Court to "issue a one-sentence admonition" to Morris's lawyers for the violation.  Id.  The Court of Appeals concluded that such a "narrow remand" was appropriate because the "implication" of this Court's violation finding was that "had [this Court] understood that the [PSLRA] required it to impose a sanction, it would have imposed the non-monetary sanction that flows most naturally from its finding-- namely, admonition."  Id.

The Court of Appeals remand was "narrow" in the sense that it narrowed the type of sanction this Court was to issue.  There is nothing in the reasoning of the Court of Appeals' decision, however, suggesting that it otherwise meant to create restrictions on what types of responsible entities this Court should sanction. Indeed, the Court of Appeals' reference only to "lawyers" is consistent with its observation that "[t]he district court is familiar with the proceedings and filings in this case and is therefore better suited than we are to identify those lawyers." Morris, 448 F.3d 285.

The Court of Appeals is not required to specify each possible outcome of a Rule 11 inquiry for the Rule to be in effect.  To read an exception for the law firm would contradict the Court of Appeals' observation that, under the PSLRA, sanctions must be

issued "in accordance with Rule 11." Morris, 448 F.3d at 284. Rule 11, in turn, directs courts to hold law firms accountable for their lawyers' actions by looking to principles of agency. The "narrowness" of the Court of Appeals' remand, therefore, is not an "exceptional circumstance" excepting Milberg from sanctions.

Second, Milberg argues that, because this Court found these violations to be de minimis, issuing a sanction against the firm itself is inappropriate. Milberg cites decisions in which courts declined to find "exceptional circumstances" excusing law firms, where the violations were egregious. Milberg extrapolates from these decisions that, where the violations are less severe, "exceptional circumstances" exist that excuse law firms from Rule 11 liability.

This argument is unpersuasive. The 1993 Advisory Committee understood a law firm's liability for its attorney's conduct to operate on "established principles of agency." Rule 11 1993 Amendments Advisory Committee note. Filing briefs in the prosecution of a litigation sits in the heartland of the agency relationship between a litigator and his law firm. Milberg does not identify a principle that would suspend the agency when a lawyer's transgression is less severe. The fact that other courts have not found "exceptional circumstances" when confronted with severe violations does not lead to, or even hint at, a rule of interpretation that would find an "exceptional circumstance"

14

sufficient to suspend the "established principles of agency" when the violation is minor.  To find such an exception would go against the stated purpose for the addition of this provision to the Rule: holding law firms responsible for their lawyers' Rule 11 violations under established principles of agency.

Finally, Milberg argues that there are "exceptional circumstances" here because the Court is only contemplating a written admonition rather than any form of monetary sanctions.  It reasons that, while individual lawyers might be embarrassed and thus chastened by a Rule 11 admonition, an admonition alone "cannot generate the same shame and introspection in an institution."

This argument is also unpersuasive.  Milberg does not explain how a simple admonition would suspend "established principles of agency."  In any event, aside from whatever introspection Rule 11 sanctions might inspire, Rule 11's "central goal" is deterrence.  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990).  The Rule 11 admonition required here will be part of the public record.  Rule 11 admonitions on the public record deter because they publicly rebuke the lawyer.  Law firms, no less than lawyers, have reputations to maintain, and, while the threat of public admonition is perhaps not the most serious of sanctions, it is a deterrent nonetheless, to lawyers and law firms alike.  Indeed, while Milberg suggests that it will not be chastised by a public rebuke, it ought to be, and the Court is quite taken aback by the contrary

15

suggestion.  The absence of monetary penalties, therefore, does not make for an "exceptional circumstance" that might suspend Milberg's joint liability under Rule 11(c)(1)(A).  Perhaps the admonition will prompt Milberg, as well as other firms, to provide more training and supervision to avoid situations such as this one.

In this case, at least one Milberg lawyer committed three Rule 11 violations while acting as an agent, and within the scope of his agency, for Milberg.  Pursuant to Rule 11(c)(1)(A), it is therefore appropriate to hold Milberg jointly responsible for the three Rule 11 violations.  The Court will admonish the firm in a forthcoming Order.

## C.    Sanctions Against Schulman

Wachovia argues that, even though Schulman did not sign any of the pleadings, he committed, and also is responsible for the commission of, the three Rule 11 violations.  Wachovia is only partially correct.

### 1.    Liability As A "Presenting" Attorney

Wachovia first argues that Schulman is liable as a "presenter" under Rule 11(b).  This argument is incorrect.

Rule 11(b) provides that: "[b]y presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party" certifies that its legal arguments and factual assertions have merit.  Fed. R. Civ. P. 11(b).  Wachovia

16

acknowledges that Schulman never actually delivered or mailed the offending papers to the Court.  Nonetheless, Wachovia argues that, because Schulman authorized the filing of the offending papers, he should be considered to have "filed" and "submitted" them under "established principles of agency."   See Reply Memorandum of Wachovia Securities Regarding Steven G. Schulman's Responsibility for Rule 11 Violations (Docket No. 191) at 8.[5]  Therefore, argues Wachovia, Schulman should be considered a "presenter" for purposes of Rule 11(b).  This argument misunderstands the import of the 1993 amendments to Rule 11.  While Rule 11(c) may create agency liability for Rule 11 violations, Rule 11(b) does not.  Schulman did not personally file or submit papers.  He therefore did not "present" them for purposes of Rule 11, and is not liable as a presenter under Rule 11(b).

Rule 11 was amended in 1983, and then again in 1993.[6]  Under its 1983 version, which was in effect until 1993, the Rule required that all papers filed with the court be signed by an attorney, and that, by that signature, the signer certified that he had read the paper, and that, if the court found that the Rule had been violated, it was to "impose upon the person who signed it . . . an

[5]    Schulman never signed any of the papers, or appeared before the Court during the litigation, and  Wachovia does not argue that Schulman "signed" the papers or "advocated" them.

[6]    There have also been technical revisions to the Rule, which are not relevant here.

17

appropriate sanction . . . ." Fed. R. Civ. P. 11 (1983)(repealed
1993). Courts identified two problems (pertinent here) with the
1983 Rule. First, not all submissions to the courts are typically
signed, and there was confusion over what submissions triggered
Rule 11 liability. See Bus. Guides, Inc. v. Chromatic Commc'ns
Enter., Inc., 498 U.S. 533, 540 (1991) (Kennedy, J., dissenting)
(questioning whether the 1983 Rule reached affidavits submitted to
a court in camera); Eisenberg v. University of New Mexico, 936 F.2d
1131, 1133 (10th Cir. 1991) (relying on Business Guides to hold
that, even though an affidavit was not "filed," it had been
"submitted" to the court for Rule 11 purposes).

Second, in Pavelic & LeFloure v. Marvel Entertainment Group,
493 U.S. 456 (1989), the Supreme Court held that Rule 11 did not
create vicarious liability, and that only the attorney who actually
signed the offending paper could be sanctioned. In Pavelic, a
partner in the two-person law firm had signed court papers, on
behalf of the firm, that violated Rule 11. The Court held that the
partner's law firm could not be sanctioned under vicarious
liability because "[w]e are . . . dealing here . . . with a Rule
that strikingly departs from normal common-law assumptions such as
that of delegability." 493 U.S. at 459. The Court explained that,
"[w]here the text establishes a duty that cannot be delegated, one
may reasonably expect it to authorize punishment only of the party
upon whom the duty is placed." Id.

18

The 1993 amendments to Rule 11(b) replaced "signing" accountability with "presenting" accountability, and specified that a person presents a paper by signing, filing, submitting it, or by later advocating its contents.  See Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse, § 5(C)(1) at 88 (3d Ed. 2000) (hereinafter "Sanctions") (noting that the "filing" and "submitting" language was designed to resolve problems that "had largely been finessed," under the 1983 Rule, and citing Eisenberg and Business Guides as examples).  The Advisory Committee's Note explains, however, that the presenter "has a nondelegable responsibility to the court, and in most cases is the person to be sanctioned for a violation."  Rule 11 1993 Amendment Advisory Committee's note.  The Supreme Court's observation in Pavelic about the 1983 version of Rule 11 certainly applies to Rule 11(b): "Where the text establishes a duty that cannot be delegated, one may reasonably expect it to authorize punishment only of the party upon whom that duty is placed."  493 U.S. at 459.  Here, Rule 11(b) placed a non-delegable duty on those attorneys who filed and submitted the offending papers or who argued them before the Court. This non-delegable duty does not extend to an attorney who authorized the filing or submission, but who did not file the papers himself.[7]

_____

[7]    Wachovia argues that this understanding of "presenter" would unfairly expose an attorney who simply dropped of a paper with the court as a favor to another attorney to non-delegable presenter

Thus, Rule 11(b) places liability only on a lawyer who "signs," "files," or "submits" a pleading or who later "advocates" its content, not on anyone else.  Wachovia does not contend that Schulman signed, filed, or submitted an offending paper or later argued its contents.  Thus, Schulman is not sanctionable under Rule 11(b).

Of course, that is not the end of the inquiry, because Rule 11(c) permits sanction of attorneys other than presenters who are "responsible" for the violation.  This, of course, was the second pertinent change of the 1993 amendments, and it was designed to address the  non-vicarious nature of Rule 11 liability identified in Pavelic.  Rule 11(c) permits a court to sanction "the attorneys, law firms, or parties that have violated [Rule 11](b) or are responsible for the violation."  Fed. R. Civ. P. 11(c) (emphasis added).  The Advisory Committee explained that this provision allowed courts to sanction attorneys "for their part in causing the violation. . . . in addition to . . . the person actually making the presentation to the court."  Rule 11 1993 Amendments Advisory Committee Note (emphasis added).

As Joseph notes in Sanctions, Rule 11(c) is designed to address precisely these circumstances:  "If a person expressly

---

liability.  This is not necessarily so.  The Advisory Committee's Note provides that a responsible attorney may be sanctioned "in addition to, or . . . instead of the person actually making the presentation to the court."   Rule 11 1993 Amendments Advisory Committee Note.

20

<u>authorizes</u> the signing, filing, submitting or later advocating of the offending paper, that person shares responsibility with the signer, filer, submitter, or advocate [under Rule 11(c)]." <u>Sanctions</u>, § 5(E)(1) at 110 (emphasis added). The Court need not go through "mental gymnastics," as pre-1993 courts sometimes felt compelled to do, <u>see</u> <u>Sanctions</u>, § 5(E)(1) at 109, in order hold Schulman to account under Rule 11.

Schulman authorized the filing of the papers, and therefore is exposed to liability under Rule 11(c). To that point, we now turn.

## 2. Liability As A "Responsible" Attorney

Alternatively, Wachovia argues that, even if Schulman is not found to be a presenter, he should be sanctioned because he is "responsible" for the violations within the meaning of Rule 11(c). Schulman counters that he should not be sanctioned because his reliance on others to investigate the facts and the law in the case was reasonable.

Under the 1993 Amendments, the Court may sanction "the attorneys, law firms, or parties that . . . are responsible for the [Rule 11] violation." Fed. R. Civ. P. 11(c). The Advisory Committee Note to the 1993 Amendments states that "[t]he sanction should be imposed on the . . . attorneys . . . who have violated the rule or who may be determined to be responsible for the violation."

21

Neither party disputes that a lead counsel may be held responsible for papers submitted by other attorneys whom he supervises in a case.  Both parties also agree, implicitly, that a lead counsel should not be held liable if his reliance on the attorneys he supervised was reasonable.[8]  Indeed, under Rule 11, an attorney may rely on other attorneys for factual assertions, if that reliance is reasonable.  See, e.g., Donaldson v. Clark, 819 F.2d 1551, 1556 (11th cir. 1987);  American Bar Association, Section of Litigation, Standards and Guidelines for Practice under Rule 11 of the Federal Rules of Civil Procedure (1988) (hereinafter "Standards") §§ (D)(11);  Sanctions § 8 (discussing factors generally and discussing factors set forth in Standards).

The Fourth Circuit has held that counsel's actions must be reviewed under an objective standard of reasonableness, rather than

---

[8]   Schulman's theory on defense is that his reliance on Safirstein was reasonable.  The case Wachovia cites for its argument that Schulman is liable held a supervising attorney responsible because his reliance on a second lawyer was unreasonable.  See Memorandum of Wachovia Securities Regarding Steven G. Schulman's Responsibility for Rule 11 Violations (Docket No. 189) at 11-12 (citing Jenkins v. Methodist Hosps. of Dallas, Inc., 2004 U.S. Dist Lexis 25131, *2, *3, *6, *7 (N.D. Tex. August 18, 2004).

the attorney's subjective mental state.  In re Kunstler, 914 F.2d 505, 518 (4th Cir. 1990).  The standard for reasonableness asks whether a reasonable attorney in like circumstances would believe the actions in question to have been justified.  Cabell v. Petty, 810 F.2d 463, 466 (4th Cir. 1987).

The parties have cited no decisions issued by the Fourth Circuit that set forth specific standards for measuring reasonable reliance on other attorneys.  However, to assess the reasonableness of an attorney's inquiries generally, several other courts have looked to Joseph's Sanctions treatise.  See, e.g., Obifuele v. 1300, LLC, 2006 U.S. Dist. LEXIS 60043, *14-15 (D. Md. Aug. 23, 2006); R.B. Ventures, Ltd. v. Shane, 2000 U.S. Dist. LEXIS 10170, *7 (S.D.N.Y. 2000).  Sanctions adopts the criteria set forth by the ABA in Standards to assess whether one attorney's reliance on another's investigation is reasonable.  The ABA's criteria in Standards were promulgated before the 1993 amendments, so they address the liability of a signer under the 1983 version of the Rule.  Nonetheless, these criteria are useful to help assess the reasonableness of Schulman's reliance on Safirstein and the other attorneys on the Morris "team."  The criteria include:

(1)   The complexity of the factual and legal issues in question;

(2)   The availability of alternate sources of information;

(3)   The extent to which counsel relied upon other counsel for the facts underlying the paper;

23

(4)   The extent to which the attorney was on notice that
      further inquiry might be appropriate;

(5)   The respective experience of relying counsel and of
      counsel on whom reliance is placed;

(6)   The history, duration and nature of the
      relationship between counsel;

(7)   The respective roles of counsel in the litigation
      (e.g., local counsel, lead counsel, forwarding
      counsel).

Standards §§ D(5), (D)(11) (referenced in Sanctions §
8(A)(8)).  It is also axiomatic that courts should avoid judging
the conduct of counsel with "the wisdom of hindsight" simply
because a violation occurred.   Rule 11 1983 Amendment Advisory
Committee's note.

With the foregoing in mind, it is necessary now to assess
Schulman's amenability to sanctions under Rule 11(c).

### a.   The Baldiswieler and White Testimony

In the Plaintiff's memorandum in opposition to Wachovia's
motion for summary judgment, and again at the summary judgment
hearing, Plaintiff's counsel mischaracterized the testimony of two
witnesses, Messrs. Baldiswieler and White.   Schulman testified
that, under the allocation of responsibilities in the case, he had
entrusted Safirstein correctly to characterize testimony that was
cited in the briefs, Tr. at 127, and, in an e-mail that was sent
before the summary judgment process, Safirstein assured Schulman

24

that he was comfortable with the facts in the case.  Schulman Ex. 14F.

The analysis begins with the proposition that this was a complex factual and legal case and that there was extensive discovery.  The principal sources of information available to Schulman when he authorized the filing of the opposition to the motion for summary judgment were the contents of the brief that he reviewed, the contents of the deposition testimony and the assurance of Safirstein.  Safirstein was in charge of the litigation day-to-day, and considering the roles of counsel in the litigation within the firm, it was reasonable for Schulman to rely upon Safirstein to know these details.  And, indeed, the violations involving the Baldiswieler and White testimony were over somewhat minute details of an otherwise lengthy deposition.  While Schulman could have read the deposition, it is not reasonable, under the circumstances, to have expected that he read every deposition citation referred to in a brief, so long as he was assured by Safirstein that the facts in the brief were correctly recited.  That is particularly true where, as here, Schulman was not on notice that further inquiry respecting the cited testimony would be appropriate.

In sum, it is reasonable for complex litigation to be organized in a way that allows counsel to provide the best professional service at the most reasonable expense.  The structure

25

adopted by Milberg, with Schulman at the helm and Safirstein in day-to-day charge of the several other lawyers and staff who worked on the case, was a reasonable way in which to handle the representation in this case.   Safirstein had a history of experience in securities litigation and had earned the confidence of the law firm by recently having been made a partner in it.   It was reasonable of Schulman, given his knowledge of Safirstein and his background, to rely on Safirstein correctly to cite, or to assure the correct citation of, deposition testimony in the opposition brief.

There is no indication that Schulman participated in the formulation of the argument at summary judgment.   However, Schulman reasonably could have been expected to know that, unless told otherwise, the contentions pressed in the brief would be asserted at the summary judgment argument.   But, it was reasonable of Schulman to expect that Safirstein would check the references in the briefs if they had been criticized by the opposing side's briefs and to make adjustments in the argument accordingly.

On balance, and considering the record as a whole, it was reasonable of Schulman to rely on Safirstein to verify the accuracy of the Baldiswieler and White testimony before either asserting it in a brief or relying on it at argument.   Therefore, Schulman

cannot be held accountable as a person responsible for the violations involving the Baldiswieler and White testimony.[9]

### b.   The "Stock Loan" Claim

The third violation of Rule 11 involves the allegation in the Amended Complaint respecting the so-called "stock loan" claim. The Rule 11 letter sent by Wachovia's counsel on March 5, 2003 was addressed to Schulman. The Rule 11 letter asserted that the "stock loan" allegation was incorrect because "no stocks in the Masters Program are loaned as alleged by Mr. Morris." Wachovia Ex. 8, p. 2. Although Schulman does not recall receiving or reviewing the Rule 11 letter, it is reasonable to believe that the letter was delivered to him, and it is reasonable to have expected him to read a letter of this sort, if not immediately upon receipt, then certainly before authorizing the opposition brief then in preparation.

The Rule 11 letter was not lengthy and it pointed out four fundamental flaws in the Amended Complaint, one of which was the premise upon which the "stock loan" claim was based. Confronted with a charge that an allegation of the complaint is false, counsel

---

[9]   All seven of the <u>Standards</u>/ABA factors support this conclusion.

has a responsibility to re-examine the basis upon which that assertion is made and either to abandon it or to be sure that there is a factual predicate for it before pressing further with it.

Schulman authorized the filing of the motion opposing the dismissal of the Amended Complaint in which the Plaintiff continued to press the "stock loan" claim after having been told in a Rule 11 letter that the predicate for it was false. At the time Schulman, as lead counsel, was the senior person who had overall strategic responsibility for the case. Tr. at 29. Whether to assert a claim such as the "stock loan" claim is a significant decision on a significant substantive issue. That is particularly true where, as here, counsel had been informed that the basis upon which the claim had been made was false. It was part of Schulman's responsibility to have assured that there was a factual basis for the claim.

It is the responsibility of lead counsel in a case who holds the responsibility for overall strategic decisions and overall management of the case, as did Schulman, to assure himself that the basic legal theories upon which a case is to proceed are grounded in fact and law. Here, the record shows that Schulman took no action to that end after having been informed by the Rule 11 letter that the "stock loan" claim was false. Schulman's responsibility was to ferret out and identify the basis of the "stock loan" claim, to review the factual predicate for the claim against the applicable law, and to make the decision whether that claim should

28

be pressed at all.  The record does not reflect that Schulman took any such action.   Nor, contrary to arguments made by the Plaintiff's briefs, does it appear that Safirstein took any action to address the issue.  Under these circumstances, Schulman cannot be heard to say that he reasonably relied upon Safirstein, for there is nothing to show that Safirstein undertook to act in a way that would permit Schulman to have reasonably relied upon Safirstein's judgment.

Accordingly, and for the foregoing reasons, Schulman is responsible, within the meaning of Rule 11(c), for the "stock loan" claim violation.  He will be appropriately admonished for that violation.

Wachovia also seeks to have Schulman held accountable for the "stock loan" violation, and for the Baldiswieler and White testimony violations, on the alternate theory that he abdicated his responsibilities as lead counsel.  In fact, Schulman devoted only approximately ten billable hours to this case and, he says, that he devoted an additional twenty to thirty hours, Tr. at 34-35, that were not billed. It is doubtful that the work performed by Schulman as lead counsel was adequate to satisfy the responsibilities of lead counsel, but whether the responsibilities of lead counsel were satisfied is not the proper measure of whether sanctions should be imposed.  Wachovia has cited no authority which would support such an application of Rule 11(b) or (c).

29

### III. CONCLUSION

For the reasons set forth above, the Court finds that Milberg and Messrs. Safirstein and Krudys are responsible for all three Rule 11 violations found in this case, and that Mr. Schulman is also responsible for the violation involving the assertion of the "stock loan" claim.  An Order shall issue consistent with this Memorandum Opinion.

The Clerk is directed to send a copy of this Memorandum Opinion to all counsel of record.

It is so ORDERED.


_____ /s/
       Robert E. Payne
       Senior United States District Judge


Richmond, Virginia
Date: July 20, 2007